**JUDGE CROTTY**

10 CV 7415

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

WPIX, INC., WNET.ORG, AMERICAN
BROADCASTING COMPANIES, INC., DISNEY
ENTERPRISES, INC., CBS BROADCASTING INC.,
CBS STUDIOS INC., THE CW TELEVISION
STATIONS INC., NBC UNIVERSAL, INC., NBC
STUDIOS, INC., UNIVERSAL NETWORK
TELEVISION, LLC, TELEMUNDO NETWORK GROUP
LLC., NBC TELEMUNDO LICENSE COMPANY,
OFFICE OF THE COMMISSIONER OF BASEBALL,
MLB ADVANCED MEDIA, L.P., COX MEDIA GROUP,
INC., FISHER BROADCASTING-SEATTLE TV, L.L.C.,
TWENTIETH CENTURY FOX FILM CORPORATION,
FOX TELEVISION STATIONS, INC., TRIBUNE
TELEVISION HOLDINGS, INC., TRIBUNE
TELEVISION NORTHWEST, INC., UNIVISION
TELEVISION GROUP, INC., THE UNIVISION
NETWORK LIMITED PARTNERSHIP, TELEFUTURA
NETWORK, WGBH EDUCATIONAL FOUNDATION,
THIRTEEN, and PUBLIC BROADCASTING SERVICE,

       Plaintiffs,

          v.

IVI, INC. and TODD WEAVER,

       Defendants.

------------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

10 Civ. ____

## COMPLAINT FOR DAMAGES AND
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiffs WPIX, Inc., WNET.ORG, American Broadcasting Companies, Inc., Disney

Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., The CW Television Stations Inc.,

NBC Universal, Inc., NBC Studios, Inc., Universal Network Television, LLC, Telemundo

Network Group LLC,  NBC Telemundo License Company,  Office of the Commissioner of

Baseball, MLB Advanced Media, L.P., Cox Media Group, Inc., Fisher Broadcasting-Seattle TV,

L.L.C., Twentieth Century Fox Film Corporation, Fox Television Stations, Inc., Tribune Television Holdings, Inc., Tribune Television Northwest, Inc., Univision Television Group, Inc., The Univision Network Limited Partnership, Telefutura Network, WGBH Educational Foundation, THIRTEEN, and Public Broadcasting Service (collectively, "plaintiffs"), by their attorneys, complain and allege against defendants ivi, Inc. and Mr. Todd Weaver (collectively, "defendants") as follows:

## NATURE OF THE ACTION

1.      On September 13, 2010, defendants began streaming over the Internet, to subscribers located throughout the world, several New York City and Seattle, Washington broadcast television stations and the copyrighted programming on those stations -- all without the consent of the affected stations or copyright owners. The purpose of this copyright infringement action is to restrain defendants from exploiting without authorization, and violating plaintiffs' rights in, some of the most valuable intellectual property created in the United States.

2.      Defendants offer online access, via the website http://www.ivi.tv, to the signals of broadcast television stations owned by several of the plaintiffs and stations on which all of the plaintiffs own copyrighted programming. Defendants are providing this commercial service featuring plaintiffs' programming twenty-four hours a day, every day, without the authorization of any of the affected stations or copyright owners.

3.      Defendants have launched their infringing Internet TV service to coincide with the start of the new fall television season -- the week of most season and series premieres (as well as plaintiff Major League Baseball's pennant races and postseason) -- thereby misappropriating some of the most important copyrighted content at a critical time of the year. Defendants have publicly stated that they plan to augment their service with television

programming broadcast in additional markets every 45 days, including Los Angeles, Chicago, and San Francisco, and to deliver their service to mobile and set-top box devices. They have already begun to advertise their service in foreign countries, and they apparently plan to market real-time access to copyrighted programming broadcast in the United States around the world.

4.     Unless restrained by this Court, the loss of control over the distribution of plaintiffs' broadcast signals and copyrighted programming, the preemption of plaintiffs' opportunities to license content over new media, the misappropriation of plaintiffs' ability to exploit foreign markets, and the other unlawful conduct contemplated by defendants threaten plaintiffs with substantial irremediable losses.

5.     Beginning the day after defendants commenced their unlawful service, several of the plaintiffs demanded that defendants, no later than the following week, cease and desist from the unauthorized streaming of their signals and programming over the Internet. Defendants initially responded by representing that they were "open to engaging in discussions" to "explore more direct contractual agreements" with certain plaintiffs. A few days later, on September 20, 2010, they commenced an improper anticipatory lawsuit in federal district court in Seattle, Washington against some  (but not all) of the plaintiffs. *ivi, Inc. v. Fisher Communications, Inc., Civil Action No. 10-cv-1512* (W.D. Wash.).  Under settled law in both the Second and Ninth Circuits, such an action should be dismissed, and plaintiffs are filing the appropriate motion to dismiss the Seattle action.

6.     Defendants have publicly claimed that so-called "copyright technicalities" allow ivi to sell its unauthorized service to anyone "anywhere on the planet" simply by paying a semi-annual fee to the Copyright Office that amounts to approximately $50. Defendants claim ivi qualifies for a thirty-year old "compulsory license" that was enacted to allow "cable systems,"

under certain circumstances and conditions, to make "secondary transmissions" of "primary transmissions" when permitted by the rules of the Federal Communications Commission ("FCC"). According to defendants, no rules whatsoever govern their retransmission of broadcast television signals over the Internet, such as the FCC rules that require consent before retransmitting the signal of a broadcast station.

7.      There are no "copyright technicalities" that allow defendants to steal plaintiffs' broadcast signals and copyrighted programming and to fence that valuable intellectual property via the Internet.   ivi's Internet TV streaming service is not a "cable system" under, or otherwise eligible for, the compulsory license set forth in Section 111 of the Copyright Act, as defendants claim. Defendants are nothing more than publicity-seeking pirates that use the pretext of a non-existent loophole to exploit the creative efforts of plaintiffs and other broadcast stations and copyright owners for unjust profit.

8.      Accordingly, plaintiffs ask that the Court preliminarily and permanently enjoin defendants' unlawful conduct and award damages arising out of defendants' unlawful conduct.

## JURISDICTION AND VENUE

9.      This action arises under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

10.      This Court has exclusive subject matter jurisdiction under 28 U.S.C. § 1338.

11.      Defendants capture the signals of, and programming transmitted by, broadcast television stations in this District -- including those stations owned by several of the plaintiffs and the programming in which several plaintiffs own the copyrights. Most of the plaintiffs are headquartered or have offices in this District and are injured in this District. Venue is properly laid in this Court under 28 U.S.C. §§ 1391 (b) and 1400 (a).

4

## **THE PARTIES**

12.     Plaintiffs are comprised of a broad array of parties injured by defendants' unlawful conduct.  They include owners of the commercial and educational stations whose programming the defendants are illegally streaming over the Internet, the nation's major broadcast networks that own and distribute programming on the affected stations, and the owners and distributors of live sports and news programming, educational and documentary programming, motion pictures and television series (including the distributors of programming over the Internet).

13.     Plaintiff WPIX, Inc. ("WPIX") is a New York corporation with its principal place of business at 220 East 42nd Street, New York, New York.  WPIX is the licensee of television station WPIX, New York, New York.  WPIX is the CW Network affiliate in the New York City market and transmits programming over-the-air in that market.  Cable systems, satellite services and other multichannel video programming distributors also make WPIX transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

14.     Plaintiff WNET.ORG ("WNET") is a New York non-profit educational corporation chartered by the Board of Regents of the University of the State of New York, with its principal place of business at 450 West 33rd Street, New York, New York.  WNET is the licensee of non-commercial, educational television station WNET(TV) and of non-commercial, educational television station WLIW(TV), both of which transmit programming over-the-air in the New York market..  Cable systems and satellite services also make WNET(TV) and WLIW(TV) programming available to their subscribers at the request of WNET under Sections 338 and 615 of the Communications Act, 47 U.S.C. §§ 338 and 615.

15.     Plaintiff American Broadcasting Companies, Inc. ("ABC") is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York, and does business as the ABC Television Network and as WABC-TV. ABC is actively engaged in the production and distribution of television programs and other copyrighted works, including programs ABC transmits to numerous broadcast television stations that it owns and operates, and other stations that are affiliated with its ABC Television Network, in the United States. ABC grants these stations the right to broadcast programming within their communities of license. The FCC has licensed ABC to operate the television station identified by the call letters WABC-TV ("WABC"), the signal of which is broadcast to viewers over-the-air in the New York City market. Cable systems, satellite services and other multichannel video programming distributors also make WABC transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

16.     Plaintiff Disney Enterprises, Inc. ("DEI") is a Delaware corporation with its principal place of business at 500 S. Buena Vista Street, Burbank, California. DEI is actively engaged in the licensing of its copyrighted properties, and certain of its affiliates are engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

17.     Plaintiff CBS Broadcasting Inc. ("CBS") is a New York corporation with its principal place of business at 51 West 52nd Street, New York, New York. CBS is actively engaged in the production and distribution of television programs and other copyrighted works – including programs CBS transmits to numerous broadcast television stations in the United States that are affiliated with its CBS Television Network, including stations that it owns and operates.

6

CBS grants these stations the right to broadcast programming within their communities of license. The FCC has licensed CBS to operate the television station identified by the call letters WCBS-TV ("WCBS"), the signal of which is broadcast to viewers in the New York City market. Cable systems, satellite services and other multichannel video programming distributors also make WCBS transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

18.     Plaintiff CBS Studios Inc. ("CBS Studios") is a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, New York.  CBS Studios is actively engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.  Fox typically grants these stations and TV networks licenses to broadcast programming on these stations within their local markets only.

19.     Plaintiff The CW Television Stations Inc. is a Delaware Corporation with its principal place of business at 51 West 52nd Street, New York, New York.  The FCC has licensed The CW Television Stations Inc. to operate the television station identified by the call letters KSTW ("KSTW"), the signal of which is broadcast to viewers over-the-air in the Seattle-Tacoma market.  Cable systems, satellite services and other multichannel video programming distributors also make KSTW transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

20.     Plaintiff NBC Universal, Inc. ("NBCU") is a Delaware corporation with its principal place of business at 30 Rockefeller Plaza, New York, New York.  NBCU is actively engaged, among other things, in the production and distribution of television programs and other copyrighted works, including programs NBCU transmits to broadcast television stations in the

7

United States that it owns and operates, and numerous other stations that are affiliated with the NBC Television Network, which is also owned and operated by NBCU. NBCU grants these stations the right to broadcast programming within their communities of license. The FCC has licensed NBCU to operate the television station identified by the call letters WNBC-TV ("WNBC"), the signal of which is broadcast to viewers over-the-air in the New York City market. Cable systems, satellite services and other multichannel video programming distributors also make WNBC transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325. NBCU also licenses its copyrighted works to various media outlets in the United States and elsewhere.

21.    Plaintiff NBC Studios, Inc. ("NBC Studios") is a New York corporation with its principal place of business at 100 Universal City Plaza, Universal City, California, and is a wholly owned subsidiary of plaintiff NBC Universal, Inc. NBC Studios is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

22.    Plaintiff Universal Network Television, LLC ("UNT") is a Delaware limited liability company with its principal place of business at 100 Universal City Plaza, Universal City, California, and is a wholly-owned subsidiary of plaintiff NBCU. UNT is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

23.    Plaintiff Telemundo Network Group LLC ("Telemundo") is a Delaware limited liability company with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida,

and is a wholly-owned subsidiary of plaintiff NBCU. Telemundo is, among other things, actively engaged in the production and licensed distribution of Spanish-language television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the Telemundo Network and distributed elsewhere in the world.

24.    Plaintiff NBC Telemundo License Company ("NBCTLC") is a Delaware corporation with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida, and is a wholly-owned subsidiary of plaintiff NBCU. The FCC has licensed NBCTLC to operate the television station identified by the call letters WNJU-TV ("WNJU"), a Spanish-language broadcasting station whose signal is broadcast to viewers over-the-air in the New York City market. Cable systems, satellite services and other multichannel video programming distributors also make WNJU transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

25.    Plaintiff Office of the Commissioner of Baseball ("BOC"), on behalf of its members, has responsibility for administrative and operational matters relating to Major League Baseball ("MLB"), and is an unincorporated association whose members are the thirty Major League Baseball Clubs. BOC's headquarters are located at 245 Park Avenue, New York, New York. BOC licenses various broadcast and cable networks the rights to telecast certain MLB games and it owns the copyright in those telecasts. BOC also licenses the distribution of "out-of-market" MLB telecasts over various media, including satellite and cable systems.

26.    Plaintiff MLB Advanced Media, L.P. ("MLBAM") is a limited partnership organized under the laws of the State of Delaware with its principal place of business at 75 Ninth Avenue, New York, New York. MLBAM is the Internet and interactive media arm of Major League Baseball. Pursuant to exclusive licenses from Plaintiff Office of the Commissioner (and

the thirty Major League Baseball Clubs), MLBAM is actively engaged in the distribution of MLB game and event telecasts (MLB Telecast) and other copyrighted works on a worldwide basis via the Internet and wireless networks. Among MLBAM's Internet distribution properties are MLB.com, the Official Site of Major League Baseball, and MLB.TV, a subscription service through which MLB Telecasts are made available to a worldwide audience using personal computers and wireless devices.

27.     Plaintiff Cox Media Group, Inc. ("CMG") is a Delaware corporation with its principal place of business at 6205 Peachtree Dunwoody Rd. in Atlanta, Georgia. CMG is an integrated broadcasting, publishing and digital media company that, through its subsidiaries and affiliates, operates, among other businesses, fifteen broadcast television stations. CMG's subsidiary, KIRO-TV, Inc., is the operator of KIRO,  the CBS network affiliate in the Seattle-Tacoma market. Cable systems, satellite services and other multichannel video programming distributors also make KIRO-TV transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

28.     Plaintiff Fisher Broadcasting-Seattle TV, L.L.C. ("Fisher") is a Delaware limited liability company with its principal place of business at 140 Fourth Avenue, Suite 500, Seattle, Washington.   Fisher is the licensee of television station KOMO-TV ("KOMO"), Seattle, Washington, the ABC network affiliate in the Seattle-Tacoma market, including its multicast channel which is affiliated with the this TV program service. Cable systems, satellite services and other multichannel video programming distributors also make KOMO transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

10

29.   Plaintiff Twentieth Century Fox Film Corporation ("Fox") is a Delaware corporation with its principal place of business at 10201 W. Pico Blvd., Los Angeles, California. Fox (together with its subsidiaries and affiliates) is actively engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public. Fox typically grants these stations and TV networks licenses to broadcast programming on these stations within their local markets only.

30.   Plaintiff Fox Television Stations, Inc. ("Fox TV") is a Delaware corporation with its principal place of business at 1211 Avenue of the Americas, New York, New York. Fox TV owns and operates many local broadcast television stations. These stations are actively engaged in the production and distribution of television programs and other copyrighted works in the United States and elsewhere. Among the Fox TV stations are the television stations with the call letters WNYW ("WNYW") and WWOR-TV ("WWOR-TV"), the signals of which are broadcast to viewers over-the-air in the New York City market. The FCC has licensed Fox TV to operate WNYW and WWOR-TV. Cable systems, satellite services and other multichannel video programming distributors also make WNYW and WWOR-TV transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

31.   Plaintiff Tribune Television Holdings, Inc. is a Delaware corporation with a principal place of business at 1813 Westlake Avenue North, Seattle, Washington. Tribune Television Holdings, Inc. is the licensee of television station KZJO, Seattle, Washington. KZJO (formerly KMYQ) is the MyNetworkTV affiliate in the Seattle-Tacoma market. Cable systems, satellite services and other multichannel video programming distributors also make KZJO

11

transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

32.     Plaintiff Tribune Television Northwest, Inc. is a Delaware corporation with its principal place of business at 1813 Westlake Avenue North, Seattle, Washington.   Tribune Television Northwest, Inc. is the licensee of television station KCPQ, Tacoma, Washington. KCPQ is the Fox network affiliate in the Seattle-Tacoma market.   Cable systems, satellite services and other multichannel video programming distributors also make WABC transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

33.     Plaintiff Univision Television Group, Inc. ("UTG") is a Delaware corporation with its principal place of business at Glenpointe Centre West, 500 Frank W. Burr Blvd, Teaneck, New Jersey.   UTG owns and operates many local broadcast television stations.   These stations are actively engaged in the production and distribution of television programs and other copyrighted works in the United States and elsewhere.   Among the UTG stations are the television stations with the call letters WXTV-DT ("WXTV") and WFUT-DT ("WFUT"), the signals of which are received by viewers over-the-air in the New York City market.   The FCC has authorized subsidiaries of UTG to operate WXTV and WFUT.   Cable systems, satellite services and other multichannel video programming distributors also make WXTV and WFUT transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

34.     Plaintiff The Univision Network Limited Partnership ("UNLP") is a Delaware corporation with its principal place of business at 9405 N.W. 41st Street, Miami, Florida.   UNLP (together with its subsidiaries and affiliates) is actively engaged in the worldwide production and

distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

35.     Plaintiff Telefutura Network ("Telefutura") is a Delaware corporation with its principal place of business at 9405 N.W. 41st Street, Doral, Florida.  Telefutura (together with its subsidiaries and affiliates) is actively engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

36.     Plaintiff WGBH Educational Foundation ("WGBH") is a charitable, non-profit Massachusetts corporation with its principal place of business at One Guest Street, Boston Massachusetts.   WGBH is the leading provider of national primetime programming for the Public Broadcasting Service ("PBS").   Among its award-winning productions are American Experience, Antiques Roadshow, Frontline, Masterpiece, and NOVA.  WGBH is also a leading provider of national children's programming, such as Arthur, Between the Lions, and Curious George.

37.     Plaintiff THIRTEEN (formerly known as Educational Broadcasting Corporation) is a New York non-profit educational corporation chartered by the Board of Regents of the University of the State of New York, with its principal place of business at 450 West 33rd Street, New York, New York. THIRTEEN is wholly-owned by its parent corporation, plaintiff WNET.ORG. THIRTEEN is actively engaged in the production and distribution of television programs, including the award-winning productions American Masters, Cyberchase, Great Performances, and Nature, and holds or shares copyrights with respect to these productions. THIRTEEN produces or co-produces approximately one-third of the programming distributed in the United States by PBS to its member stations.

13

38.    Plaintiff Public Broadcasting Service ("PBS") is a District of Columbia non-profit corporation with its principal place of business at 2100 Crystal Drive, Arlington, Virginia. PBS's mission is to promote the advancement of education, culture and citizenship, and in furtherance of its mission, PBS uses television, the Internet and other media. PBS acquires and distributes a wide range of non-commercial television and video programming on behalf of its member stations featuring educational, cultural and entertainment topics. PBS's members include virtually all of the public television stations in the United States.

39.    On information and belief, defendant ivi, Inc. ("ivi") is a company that has its principal place of business in Seattle, Washington.

40.    On information and belief, defendant Todd Weaver ("Weaver") is ivi's founder and chief executive officer and is a resident of Seattle, Washington, and is personally responsible for the operation of the infringing ivi service.

## NATURE OF DEFENDANTS' UNLAWFUL CONDUCT

41.    On September 13, 2010, defendants began operating their for-profit commercial service that provides subscribers with online access to all of the programming telecast by numerous broadcast television stations serving either the New York, New York or Seattle, Washington markets (collectively, the "Stations"). Upon information and belief, defendants capture the signals of these Stations in their local markets (New York and Seattle), transmit those signals to defendants' servers, and then stream the signals over the Internet to customers anywhere in the world using a peer-to-peer system that, among other things, utilizes bandwidth provided by those customers.

42.    To take advantage of defendants' service, including access to all of the programming on the Stations, an individual with Internet access anywhere in the world need only

(a) access the ivi website (http://www.ivi.tv/) on his or her computer; (b) create an account by providing an e-mail address and a password; (c) agree to the terms of an end user license; and (d) pay the defendant a fee. After a 30-day free trial, that fee is $4.99 per month. The principal pages of the ivi website explaining this are attached hereto as Exhibit 1.

43.     An ivi subscriber may download, install and use on a computer (or other applicable device) the ivi TV application. That application allows the subscriber to access, anywhere in the world, the television programming exhibited by the Stations and all of the other broadcast television stations that defendants stream. For an additional fee of $0.99 per month, the subscriber is able to copy the programming that defendants stream.

44.     Defendants have not obtained the authorization of plaintiffs or, upon information and belief, any other party, to stream over the Internet the signals of the Stations or the programming broadcast by them.

45.     Upon information and belief, defendants plan to expand the ivi service to capture signals from additional markets, including Los Angeles, Chicago, and San Francisco, every 45 days. *See* Exhibit 2 hereto.

46.     Upon information and belief, defendants plan to distribute ivi's TV service including plaintiffs' signals and/or copyrighted programming to iPad, iPhone and Android mobile devices, and have already submitted an "iPad app." Upon information and belief, defendants also plan to distribute their service to users of various third party set-top boxes. *See* Exhibit 2.

47.     Within days after defendants commenced their unlawful Internet TV service on September 13, 2010, several plaintiffs demanded that defendants cease and desist from streaming the signals of the stations they owned and the copyrighted programming that they owned. These

plaintiffs advised defendants that their continued operation of the ivi service would subject them to liability for, among other things, willful copyright infringement. These plaintiffs hoped to persuade defendants to stop their unlawful conduct without burdening the parties and the courts with unnecessary litigation. To afford defendants a fair opportunity to wind down their service, these plaintiffs gave defendants until Wednesday, September 22, 2010, to cease and desist their infringing activity.

48.     On the morning of September 20, 2010, defendant ivi filed a lawsuit in federal district court in Seattle, Washington. *ivi, Inc. v. Fisher Communications, Inc., Civil Action No. 10-cv-1512* (W.D. Wash.). At the same time defendants issued a press release announcing their lawsuit and circulated that press release to various media outlets. Defendants' press release is attached as Exhibit 3.

49.     Defendants have continued to engage in their unlawful practices as alleged above.

## COUNT ONE
## <u>COPYRIGHT INFRINGEMENT</u>

50.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of paragraphs 1 through 49 above.

51.     Plaintiffs (and/or their parents, subsidiaries or affiliates) are the legal or beneficial owners of the copyrights in numerous programs that have been, or will be, exhibited over broadcast television stations and a variety of other media outlets. A non-exhaustive list of such television programs, identifying representative examples of programs in which plaintiffs (and/or their parents, subsidiaries or affiliates) own the pertinent copyright interests, is set forth in Exhibit 4 ("TV Programs").

16

52. Each such TV Program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102. Each such TV Program has been or will be registered with the United States Copyright Office or is the subject of an application for registration filed with the Copyright Office. Representative examples of the copyright registration certificates or other documentation demonstrating compliance with Sections 408(f) and 411 of the Copyright Act, 17 U.S.C. §§ 408 (f) & 411, and implementing Copyright Office regulations, corresponding to the TV Programs identified in Exhibit 4, are attached hereto as Exhibits 5 to 55.

53. Each TV Program has been created or licensed for exhibition by plaintiffs (and/or their parents, subsidiaries or affiliates), the transmissions of which the defendants are streaming without authorization as part of its ivi service. On information and belief, defendants have streamed or will stream, as part of ivi's unauthorized service, each TV Program and numerous other works in which plaintiffs own copyrights.

54. Under Section 106 of the Copyright Act, 17 U.S.C. § 106, plaintiffs (and/or their parents, subsidiaries or affiliates) own the exclusive rights, among others, to reproduce in copies their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

55. Under Section 106 of the Copyright Act, 17 U.S.C. § 106, plaintiffs (and/or their parents, subsidiaries or affiliates) also own the exclusive rights to authorize others to exercise the rights set forth in the preceding paragraph 54.

17

56.   Neither the plaintiffs nor any other person authorized by plaintiffs have granted any license, permission or authorization to defendants to exercise any of the rights set forth in paragraph 54 or to authorize others to exercise such rights, respecting the TV Programs or any other works in which plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.

57.   In offering the ivi service, defendants have exercised and will exercise (or have authorized or will authorize others to exercise) one or more of plaintiffs' exclusive rights set forth in paragraph 54 respecting the TV Programs and other works in which plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.

58.   Defendants have committed and will commit each act of copyright infringement with the knowledge that they were not authorized to exercise any of the rights (or authorize others to exercise any of the rights) set forth in paragraph 54 respecting the TV Programs and other works in which plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights. Defendants' conduct thus has constituted and will constitute willful copyright infringement.

59.   As a result of defendants' willful copyright infringement, plaintiffs have been and are being irreparably harmed.

60.   Unless restrained by the Court, defendants will continue to engage in such willful copyright infringement.

## COUNT TWO
## SECONDARY COPYRIGHT INFRINGEMENT

61.   Plaintiffs hereby incorporate by reference and reallege each and every allegation of paragraphs 1 through 60 above.

62.   Through the creation, maintenance and operation of their unauthorized Internet TV service, defendants induce, contribute to, and are vicariously liable for any copyright infringement committed by its subscribers.

18

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court enter judgment in plaintiffs' favor and against defendants as follows:

A.    Adjudge and declare, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 (a) & 2202, that defendants have infringed plaintiffs' copyrights in violation of 17 U.S.C. § 101 *et seq.* by operating the ivi service and engaging in the conduct described above;

B.    Issue a preliminary and permanent injunction enjoining and restraining defendants and their officers, agents, servants, and employees and all those in active concert or participation with them, from infringing plaintiffs' exclusive rights under the Copyright Act by offering the ivi service and engaging in the conduct described above;

C.    Award plaintiffs their damages, costs and reasonable attorneys' fees in accordance with 17 U.S.C. §§ 504 and 505 and other applicable law; and

D.    Award such other and further relief as the Court shall deem just and appropriate.

By:  _____

Peter L. Zimroth
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York
(212) 715-1000
*peter.zimroth@aporter.com*

-- and --

Robert Alan Garrett
Hadrian R. Katz
C. Scott Morrow
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000
*robert.garrett@aporter.com*
*hadrian.katz@aporter.com*

*scott.morrow@aporter.com*

*Counsel for Plaintiffs*

Dated:  September 28, 2010