UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

WPIX, INC.,
WNET.ORG,
AMERICAN BROADCASTING COMPANIES, INC.,
DISNEY ENTERPRISES, INC.,
CBS BROADCASTING INC.,
CBS STUDIOS INC.,
THE CW TELEVISION STATIONS INC.,
NBC UNIVERSAL, INC.,
NBC STUDIOS, INC.,
UNIVERSAL NETWORK TELEVISION, LLC,
TELEMUNDO NETWORK GROUP LLC.,
NBC TELEMUNDO LICENSE COMPANY,
OFFICE OF THE COMMISSIONER OF BASEBALL,
MLB ADVANCED MEDIA, L.P.,
COX MEDIA GROUP, INC.,                                         :    10 Civ. 07415-NRB
FISHER BROADCASTING-SEATTLE TV, L.L.C.,
TWENTIETH CENTURY FOX FILM CORPORATION,
FOX TELEVISION STATIONS, INC.,
TRIBUNE TELEVISION HOLDINGS, INC.,
TRIBUNE TELEVISION NORTHWEST, INC.,
UNIVISION TELEVISION GROUP, INC.,
THE UNIVISION NETWORK LIMITED PARTNERSHIP,
TELEFUTURA NETWORK,
WGBH EDUCATIONAL FOUNDATION,
THIRTEEN,
and PUBLIC BROADCASTING SERVICE,

       Plaintiffs,

         v.

IVI, INC. and TODD WEAVER,

       Defendants.

-------------------------------------------------------------------------X


## MEMORANDUM OF PLAINTIFFS IN OPPOSITION
## TO MOTION TO TRANSFER AND/OR DISMISS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

I.   THE MOTION TO TRANSFER SHOULD BE DENIED................................................1

    A.   Legal Standard ............................................................................................................1

    B.   The Relevant Factors Weigh Against Transfer...........................................................3

        1.   Plaintiffs' Choice of Forum ..............................................................................3

        2.   The Convenience of the Witnesses....................................................................5

        3.   The Location of Relevant Documents and Relative Ease of Access to
            Sources of Proof................................................................................................7

        4.   The Convenience of the Parties ........................................................................7

        5.   The Locus of Operative Facts .........................................................................10

        6.   The Ability To Compel Attendance of Unwilling Witnesses..........................11

        7.   The Relative Means of the Parties ..................................................................11

        8.   Trial Efficiency and the Interests of Justice....................................................12

        9.   The Forum's Familiarity With Governing Law ...............................................12

II.  THE MOTION TO DISMISS MR. WEAVER SHOULD BE DENIED ..........................13

    A.   Legal Standard ..........................................................................................................13

    B.   This Court Has Jurisdiction Over Mr. Weaver .........................................................15

    C.   The Exercise of Jurisdiction Over Mr. Weaver Does Not Offend Due
        Process. ......................................................................................................................19

CONCLUSION.................................................................................................................20

## INTRODUCTION

Only nine of the twenty-six plaintiffs here are defendants in the anticipatory declaratory action brought by ivi, Inc. ("ivi") in the Western District of Washington in Seattle. Those parties have filed a motion to dismiss the Seattle action that is fully briefed. To date, the court hearing that action has not yet ruled on or set a hearing for argument on that motion. Until the Seattle court does so, any application to transfer the claims of those nine plaintiffs to another venue is premature.

The remaining seventeen plaintiffs – television stations, motion picture studios, and other television program copyright owners – have filed an action in this District, in which most of the plaintiffs have significant operations, and which by any measure is the center of the United States television industry. The irreparable injury caused by ivi, which is the subject of plaintiffs' pending motion for temporary restraining order or preliminary injunction, is having a particularly acute impact in this District. These plaintiffs are entitled to their choice of forum, and there is no legitimate basis for transfer to any other venue.

As for the claims against Mr. Todd Weaver, a matter that is not raised in the Seattle action, there are no proper grounds for dismissal. As demonstrated below, plaintiffs have properly pleaded claims against the principal developer, operator, and spokesman of the infringing ivi system, and abundant documentary evidence supports those claims.

## I.      THE MOTION TO TRANSFER SHOULD BE DENIED

### A.      Legal Standard

Under 28 U.S.C. § 1404 (a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision whether to grant a motion to transfer under

section 1404 (a) "is left to the sound discretion of the district court." *Filmline (Cross-Country)*

*Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989).  "The party seeking venue

transfer bears the significant burden of making a clear and convincing showing that a case should

be transferred." *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.

Supp. 62, 66 (S.D.N.Y. 1993); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81,

95 (S.D.N.Y. 1995) ("the moving party must make a clear-cut showing that transfer is in the best

interests of the litigation") (citation and internal quotation marks omitted).  Motions to transfer

venue are not to be liberally granted, as the plaintiffs' choice of venue is not to be lightly

disturbed. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In considering a motion to transfer, the Court must conduct a two-part inquiry.

First, it must determine whether the action to be transferred could have been brought in

the transferee court. *It's A 10, Inc. v. pH Beauty Labs, Inc.*, No. 10 Civ. 972, 2010 WL 2402848,

at *2 (S.D.N.Y. June 14, 2010).  In this case, many of the plaintiffs have no contacts whatever

with the Western District of Washington.  The burden was upon ivi as movant to demonstrate

that the plaintiffs are all subject to the jurisdiction of the Seattle court, and it has utterly failed to

do so.

Second, the Court must consider whether the convenience of the parties and witnesses

and the interest of justice make transfer appropriate. *Id.*  The factors that district courts in the

Second Circuit consider in determining whether one venue is more convenient than another

include:  (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location

of relevant documents and relative ease of access to sources of proof, (4) the convenience of the

parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of

unwilling witnesses, (7) the relative means of the parties, (8) trial efficiency and the interests of

2

justice; and (9) the forum's familiarity with governing law. *Id.*, *citing D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir.2006) and *Glass v. S & M NuTec, LLC*, 456 F.Supp.2d 498, 501 (S.D.N.Y.2006). Unless the balancing of these and any other relevant factors *strongly* favors the movant, transfer should be denied. *Banker v. Esperanza Health Sys., Ltd.*, No. 05 Civ. 4115, 2010 WL 2102635, at *2 (S.D.N.Y. May 20, 2010) (finding defendants failed to sustain their burden in demonstrating that the balance of factors favors the request to transfer venue), *quoting Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998); *see also Rates Tech. Inc v. UTT Corp.*, No. 94 Civ. 0326, 1995 WL 16788, at *6 (S.D.N.Y. Jan. 18, 1995) ("The burden of demonstrating the desirability of transfer lies with the moving party, and the burden is a heavy one."). As explained below, these factors establish that transfer to Seattle is not warranted.

**B.      The Relevant Factors Weigh Against Transfer**

**1.      Plaintiffs' Choice of Forum**

"Courts in this circuit are loath to disturb a plaintiff's choice of forum absent a showing that 'the balance of convenience and justice weighs heavily in favor of transfer.'" *Central Sports Army Club v. Arena Assocs., Inc.*, 952 F. Supp. 181, 189 (S.D.N.Y. 1997); *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992) ("heavy burden" in a copyright infringement action). This is especially true where, as here, plaintiffs' chosen forum is a principal place of business. *See Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 330 (S.D.N.Y. 1998) (*citing Golconda Mining Corp. v. Herlands*, 365 F.2d 856, 857 (2d Cir. 1966)); *Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003) ("[w]here there is ongoing business activity in the chosen forum ... plaintiff's choice of forum is given 'more deference than it would if the connection to [the] forum were truly de minimis'").

With respect to seventeen plaintiffs, this case is the first one filed, and there is no basis to disturb their choice of forum. Defendants argue that they were the first to file with respect to the other nine, based on their Seattle complaint. ivi did file its declaratory action against nine of the plaintiffs before this case was filed, but that "first-filed" Seattle lawsuit was an improper anticipatory filing made to deprive the natural claimants of their choice of forum.

Filing first does not afford priority when 'special circumstances' warrant giving priority to the second suit. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). Such "special circumstances" exist "where the first-filed lawsuit is an improper anticipatory declaratory judgment action." *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978). *cert. denied*, 440 U.S. 908 (1979). Declaratory actions filed in response to a direct threat of litigation are not entitled to priority. *Id.* (holding that the district court properly allowed a later-filed suit to proceed because the first-filed declaratory suit was triggered by notice letter and was therefore "in apparent anticipation of [the later-filed suit]"); *Fed. Ins. Co. v. May Dep't Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) (dismissing declaratory action filed in response to defendant's letter informing plaintiff that if it failed to satisfy defendant's claim under the insurance policy by date defendant would sue on the policy); *Sturge v. Diversified Transport Corp.*, 772 F. Supp. 183, 186-87 (S.D.N.Y. 1991) (dismissing action triggered by notice of suit given to plaintiffs); *A & E Television Networks v. Genuine Entm't, Inc.*, No. 09 Civ. 7422, 2010 WL 2308092, *1 (S.D.N.Y. June 10, 2010) (dismissing declaratory action brought only after learning defendants were preparing to sue elsewhere).

This well-established principle is based on the notion that "a plaintiff should not be permitted to file a preemptive action in order to deprive the 'natural plaintiff' of its choice of forum." 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.13 [1] [c] [i] (3d ed.

2007).  The public policy rationale for this principle is that permitting such preemptive suits is likely to discourage claimants from attempting to resolve disputes without litigation, for fear of losing their right to choice of forum.  *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978) ("Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing").

Here, ivi's action in Seattle was an improper response to the threat of litigation.  ivi filed its declaratory complaint as an immediate response to cease and desist letters, in an effort to preempt the natural claimants' right to choice of forum.  Declaratory jurisdiction is designed to afford a remedy to persons accused of misconduct in situations where the accuser is unwilling to resolve the matter in court.  It is not designed to permit the accused wrongdoer to race the natural claimants to the courthouse.  *See Factors*, 579 F.2d at 219 ("(t)he federal declaratory judgment is not a prize to the winner of a race to the courthouses"), *quoting Perez v. Ledesma*, 401 U.S. 82, 119 n.12 (1971) (Brennan, J. dissenting))

### 2.    The Convenience of the Witnesses

Courts generally consider the convenience of the parties and non-party witnesses to be the most important factor in a motion to transfer venue.  *See, e.g., Coker v. Bank of Am.*, 984 F. Supp. 757, 765 (S.D.N.Y. 1997).  "In order to meets its burden, the motion of the party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony."  *Capitol Records, Inc. v. Kuang Dyi Co. of RM*, No. 03 Civ. 0520, 2004 WL 405961, at *2 (S.D.N.Y. March 4, 2004) (*quoting Editorial*, 829 F. Supp. at 66-67); *see Factors*, 579 F.2d at 218; *Arrow Elecs. Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 267 n.1 (S.D.N.Y. 1989) ("A party

making a motion to transfer based on the convenience of the witnesses does have an obligation to provide the Court with a list of the witnesses inconvenienced by the current forum and must 'make a general statement of what their testimony will cover'") (*quoting Factors*, 579 F.2d at 218).

Defendants have not identified any specific witnesses they intend to call, let alone any hardship to those witnesses; nor have they specified any proposed testimony. Defendants simply assert that ivi is a small company with few employees who would be burdened by having to litigate in New York. Weaver Decl. ¶9. Without more, such assertions are not sufficient to justify a transfer. *Orb Factory,* 6 F. Supp. 2d at 208-09 ("Vague generalizations and failure to clearly specify key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue").

Contrary to defendants' generalized claims of purported inconvenience "traveling to the opposite end of the country," defendants' actions show that it is more than capable of traveling, and in fact does travel, to New York whenever that is useful to their business. Indeed, ivi founder and CEO Weaver was scheduled to speak at a conference in New York on the day he signed a declaration saying that he does not come to New York on business. *See* Declaration of Scott Morrow ("Morrow Decl."), Ex. 1, at p. 2;  Declaration of Todd Weaver in Support of ivi's Opposition to Motion to Dismiss in *ivi, Inc. v. Fisher Commc'n, Inc.,* Civil Action No. 10-cv-1512 (W.D. Wash.), ¶¶ 7, 9 (dated Oct. 6, 2010) (without exhibits), Morrow Decl., Ex. 2. Mr. Weaver was also scheduled to speak at the CTAM Summit in New Orleans, also at the "opposite end" of the country to Seattle. *See* Morrow Decl., Ex. 3, at p. 1. Further, ivi recently had the wherewithal to send "grassroots based street teams handing out 'Keep Calm, ivi's On' flyers across Manhattan, leading to even more word-of-mouth buzz about ivi TV's popular service."

Morrow Decl., Ex. 4, at p. 1.  Given defendants' ample ability to travel to New York and around

the country for its own business reasons, their complaints of inconvenience should be rejected.

It is undisputed that industry experts based in New York City will present testimony

regarding the injury caused by ivi's unauthorized television retransmissions.  New York is the

home of all major television networks, most major sports leagues, most of the television stations

whose signals are being retransmitted by ivi, and most copyright owners of television

programming.

### 3.    The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Although the location of relevant documents is one of the less significant factors in the

convenience analysis, it also favors the plaintiffs.  The evidence developed by plaintiffs is

located in New York, much of the discovery ivi may be seeking is in New York because many of

the plaintiffs are located in New York, and the broadcasts of five of the stations at issue in this

litigation originate from New York.  It also appears that the vast majority of ivi's subscribers are

now in New York, as ivi boasts that its Manhattan street teams' "'Keep Calm, ivi's On'

campaign was wildly successful resulting in a 323% increase in new subscribers from pre-

blackout to post-blackout." Morrow Decl., Ex. 4, at p. 1.  The principal evidence sought from ivi

would be the logs and records of its computer servers, which are apparently located in California

(not Washington state), but could easily be sent electronically anywhere in the country.  *See*

*Coker v. Bank of America*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("In today's era of

photocopying, fax machines, and Federal Express," the location of the documents is not a

significant factor in the convenience analysis) .

### 4.    The Convenience of the Parties

We are aware of only two persons actively involved in ivi's business who may elect to appear in court:  Mr. Weaver, resident in Seattle, and ivi's press agent and a principal in the business, Hal Bringman, resident in Los Angeles.  As for Mr. Weaver, he states in a declaration that New York would be inconvenient because "I own no real property in New York, have not traveled to New York in the past several years for either personal or business purposes, and [*sic*] not been to New York with respect to any of the alleged conduct concerning the business of ivi." Weaver Decl. ¶ 8.  According to Mr. Weaver, "[t]he inconvenience and expense I would expect to experience if forced to defend myself as an individual defendant would pose a tremendous hardship." Weaver Decl. ¶ 10.[1]

Such protestations are directly contradicted by Mr. Weaver's own public statements, which indicate that he has scheduled various appearances in New York City to promote the ivi service.  According to a press release issued prior to the date of Mr. Weaver's declaration:

> ivi's founder and CEO, Todd Weaver, will be speaking on a panel at The Adweb 3.0 conference on October 6, 2010, at The Cornell Club, New York, NY.  He will join the likes of Magid Abraham, CEO, ComScore, Ed Montes, EVP, Havas Digital, and Peter Bordes, CEO, MediaTrust, among other top thought leaders, to debate relevant issues and how ivi instantly becomes a major player in the battle for consumers' attention and potentially for the $180 billion global TV advertising market.

Morrow Decl., Ex. 1, at p. 2.  Other ivi press releases indicate that Mr. Weaver is "confirmed" to speak in New York City on November 11 and 12, 2010 (and elsewhere throughout the country)

---

[1] Mr. Weaver previously submitted a declaration to the Seattle court making the same claims: that he has "not traveled to New York in the past several years for either personal or business purposes, that he has not been to New York with respect to any of the alleged conduct concerning the business of ivi," and the "inconvenience and expense ivi would expect to experience if forced to defend itself in New York would pose a tremendous hardship." *See* Morrow Decl., Ex. 2 (dated October 6, 2010).  Curiously, Mr. Weaver executed the declaration submitted in support of the instant motion earlier, on September 29, 2010.  The date of the declaration submitted here, executed long before the submission of ivi's motion here and the similar declaration filed in the Seattle action, remains to be explored.

to promote ivi. *See* Morrow Decl., Ex. 3. It is not clear whether Mr. Weaver has honored or will honor all of his planned New York City speaking engagements, or whether he has cancelled or will cancel those engagements in order to support the claims made in this motion. It is clear, however, that when it suits ivi's commercial interests, Mr. Weaver and ivi have no difficulty traveling to New York City for public relations opportunities.

In addition, ivi improperly attempted to insert itself into the negotiations between New York-based plaintiff Fox Television Stations, Inc. and a major New York City cable system owner (Cablevision) concerning the retransmission by Cablevision of two New York City television stations owned by FOX (WNYW and WWOR). ivi publicized itself throughout New York as an alternative to Cablevision. *See* Morrow Decl., Ex. 5. Indeed, according to ivi's recent press release:

> During the course of the News Corp induced greed-fest, ivi TV garnered significant press coverage as a viable, legal alternative. The press campaign was complimented [*sic*] by grassroots based street teams handing out "Keep Calm, ivi's On" flyers across Manhattan, leading to even more word-of-mouth buzz about ivi TV's popular service.

Morrow Decl., Ex. 4, at p. 1. Given that ivi has already scheduled various appearances in New York City, injected itself into retransmission consent negotiations in New York City between two New York entities, targeted prospective New York subscribers by hiring Manhattan street teams to hand out ivi flyers, tacitly conceded that New York subscribers probably comprise the majority of its subscriber base, and now seeks to become "a major player in the battle for consumers' attention and potentially for the $180 billion global TV advertising market" which is centered in New York, Mr. Weaver's protestations that this forum is inconvenient are not credible.

Moreover, merely shifting the burden of inconvenience from the defendant to the plaintiffs is an insufficient ground for transfer. *See Am. S.S. Owners,* 474 F. Supp. 2d at 484;

*Federman Assocs. v. Paradigm Med. Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, at *3 (S.D.N.Y. April 8, 1997) ("Regardless of the forum in which the action takes place, one party will be obligated to travel. Accordingly, this factor weighs neutrally in the instant analysis"); *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994) ("A transfer should not merely shift the burden of inconvenience from one party to the other"). And that is what defendants seek to do by moving this case to Seattle. The business executives and counsel of the plaintiffs are deeply concerned about ivi's activities, and are following the litigation closely. Many of them intend to attend hearings in this case, and several are likely to testify at the preliminary injunction hearing, and ultimately at any trial. Requiring representatives of up to 26 plaintiffs to make trips to Seattle to participate in this case would simply transfer inconvenience to the plaintiffs, and aggravate the damage that ivi is causing.

### 5. The Locus of Operative Facts

Courts in this District have held that the locus of operative facts is in the initially chosen forum if acts of copyright infringement, trademark infringement, dilution, or unfair competition have occurred there. *See Capitol Records*, 2004 WL 405961, at *4 (*citing Kiss My Face.*, 2003 WL 22244587 at *3); *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00 Civ. 1971, 2000 WL 1290585, at *7 (S.D.N.Y. Sept. 13, 2000) (finding locus of operative facts to be in the Southern District of New York where defendant sold business cards in New York via the Internet and through third party businesses, despite the fact that defendant was an Arizona corporation with its principal place of business in Arizona). The locus of the operative facts here is in New York: ivi is capturing the signals of a number of prominent New York stations, including WCBS, WNBC, WNYW, WABC, WPIX, WNET, and WWOR using equipment located in New York. *See* Motion at 7 (noting ivi has an antenna in New York City to receive over-the-air television broadcasts).

Defendants claim that "[t]he locus of the operative facts is more in Seattle than in New York," and it is certainly true that ivi is capturing Seattle signals as well as New York ones. But transfer is not warranted by such generalized statements. *See Capitol Records*, 2004 WL 405961, at \*4 (holding the connection to the locus of operative events, and the "center of gravity of the litigation" not tilted in favor of transfer out of New York, especially where defendants' claims are vague). While ivi is currently retransmitting only New York and Seattle broadcasts, it has made clear that Los Angeles stations will be next, and that other markets will follow at regular intervals. *See* Morrow Decl., Ex. 6, at p. 2. The harm that ivi will cause to the television industry will be nationwide in scope, but centered in and most keenly felt in New York where many content owners and broadcasters are located.

### 6.    The Ability To Compel Attendance of Unwilling Witnesses

Defendants have not identified any unwilling witnesses over whom there may be an issue as to availability of process. *See* Motion at 7 ("At this early stage, it appears unlikely that there will be any third party witnesses who are located in either New York or Seattle, and none have been identified who might be unwilling"). This factor accordingly does not support transfer. *See, e.g., GPA, Inc. v. Liggett Group, Inc.*, No. 94 Civ. 5735, 1994 WL 537017, at \*2 (S.D.N.Y. Oct. 4, 1994) (declining to find availability of process to compel unwilling witnesses as a factor in favor of transfer where defendant failed to offer evidence that witnesses would be unwilling to travel).

### 7.    The Relative Means of the Parties

A party arguing for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to its finances. *NBA Props., Inc. v. Salvino, Inc.*, No. 99 Civ. 117799, 2000 WL 323257, at \*10 (S.D.N.Y. March 27, 2000); *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989) ("While plaintiff is

a substantially larger corporation, defendant has made no showing that defending this action in this District would be unduly burdensome"). Defendants, in simply claiming that ivi is a small corporation and that plaintiffs are large, have not provided such documentation. If ivi can afford to erect equipment in New York to accomplish its retransmissions, and to support Mr. Weaver's busy conference schedule in New York City and around the country, it can presumably afford to defend itself here.

### 8.    Trial Efficiency and the Interests of Justice

Trial efficiency concerns do not favor transfer, and justice can be as well served in this Court as in any other. Defendants assert that the docket in Seattle is shorter than that here, and that cases in Washington state typically come to trial more quickly. *See* Motion at 8-9. There is no basis for concluding that this Court would proceed any less expeditiously than would the court in Seattle. Similarly unavailing is ivi's argument that transfer is warranted because an additional Seattle-based television broadcaster that is not involved in the Seattle action has accused ivi of copyright infringement. *See* Motion at 8. What ivi fails to disclose is that that accuser was Cox Media Group, Inc., a plaintiff in the instant matter, that has brought its claims for relief in this Court. Plaintiff Tribune also owns two stations in Seattle, and it, too, has brought its claims here.

### 9.    The Forum's Familiarity With Governing Law

The courts of both New York and Washington are presumed to be equally familiar with the governing law. *See IDT Worldwide, Inc. v. Supreme Int'l Corp.*, No. 95 Civ. 4821, 1995 WL 702359, at *3 (S.D.N.Y. Nov. 28, 1995). Familiarity provides no basis for transfer.

For all of these reasons, ivi's motion to transfer should be denied.

12

## II.   THE MOTION TO DISMISS MR. WEAVER SHOULD BE DENIED

### A.   Legal Standard

Plaintiffs' complaint alleges, in the "simple, concise, and direct" manner required by rule 8.1 (d) (1) of the Federal Rules of Civil Procedure, that Mr. Todd Weaver "is ivi's founder and chief executive officer" and is "personally responsible for the operation of the infringing ivi service." Complaint ¶40. Defendants contend that the Court lacks jurisdiction over Mr. Weaver because plaintiffs' complaint "makes no mention of any contacts between Weaver and New York," "does not allege that Weaver has done business in the state," and does not include allegations "that [Mr. Weaver] personally committed a tortious act within the state." Motion at 8-9. Such contentions misstate plaintiffs' jurisdictional burden and the law of this forum. As described below, Mr. Weaver is subject to the personal jurisdiction of this Court because he is personally liable for copyright infringement that has taken place in this District, he is a primary actor in ivi's acts of infringement, and the exercise of personal jurisdiction over him comports with traditional notions of fair play and substantial justice.

In matters where no discovery has been conducted, a plaintiff may defeat a challenge to jurisdiction "based on legally sufficient allegations of jurisdiction." *Metropolitan Life Ins, Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.), *cert. denied*, 519 U.S. 1006, 1007 (1996); *accord, Ball v. Mettalurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990). A court deciding such a motion "must accept as true all of the factual allegations set out in a plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Scott v. National Ass'n for Stock Car Racing, Inc.*, No. 06 Civ. 6029, 2008 WL 217049, at *10 (S.D.N.Y. Jan. 17, 2008); *Editorial Musical Latino Americana S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp 62, 64 (S.D.N.Y. 1993).

Moreover, under the Federal Rules, a "short and plain" complaint is sufficient as long as it puts the defendant on notice of the claims against it.   Fed.R.Civ.P. 8(a).   And It is well established that a plaintiff need not plead evidence in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002), and that the specific facts underlying a plaintiff's claim may be brought out during discovery. *See Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir.2005) ("the [Federal] Rules ... rely on extensive discovery to flesh out the claims and issues in dispute"); *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir.1999) (noting that "the skeletal presentation in a notice pleading may be fleshed out later").

In addition, on a motion of this kind, the Court "has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981).  And while a plaintiff has the ultimate burden of establishing jurisdiction by a preponderance of the evidence, prior to an evidentiary hearing or trial, "a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Id.; accord, Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.*, 827 F. Supp. 171, 174 (W.D.N.Y. 1993); *see Edison Arantes Do Nasciemento, a/k/a Pele v. Fox Lorber Assoc. Inc.*, No. 93 Civ. 1230, 1993 WL 183685, *2-3 (S.D.N.Y. May 25, 1993).

In a federal question case involving a statute such as the Copyright Act, a federal court applies the personal jurisdiction rules of the forum state. *PDK Labs, Inc, v. Friedlander*, 103 F.3d 1105, 1108 (2d. Cir. 1997).  New York's long-arm statute provides personal jurisdiction over any non-domiciliary who in person or through an agent transacts any business within the state or commits a tortious act within the state. *See* C.P.L.R. § 302 (a) (1), (a) (2) (McKinney's

2008).  The statute also confers jurisdiction over a non-domiciliary who commit a tort outside of New York causing harm within New York.  C.P.L.R. § 302 (a) (3) (McKinney's 2008).

**B.    This Court Has Jurisdiction Over Mr. Weaver**

Defendants do not contest that this Court has jurisdiction over ivi.  Indeed, the Court has jurisdiction over ivi under all three prongs of New York's long-arm statute:

The Court has jurisdiction under C.P.L.R. § 302 (a) (1) because ivi transacts business in New York – its website allows users to access and view within New York copyrighted programming broadcast by New York television stations by creating an account, agreeing to the terms of an end user license, paying a fee, and downloading, installing and using the ivi TV application.  Complaint, ¶42.  *See Hsin Ten Enter. USA Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) (finding that website operator was "doing business in New York" where website permitted user to "purchase ... online, download an order form, download an application to become an 'independent affiliate,' and ask questions of an online representative"); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y.2000).  Indeed, as noted above, ivi has actively solicited New York subscribers to use its service in the context of the recent commercial impasse between plaintiff Fox and Cablevision,  going so far as sending teams to walk the streets of Manhattan recruiting subscribers.  ivi claims its efforts to recruit New Yorkers was highly successful and in fact tripled ivi's subscriber base.

The Court also has jurisdiction over ivi under CPLR § 302 (a) (2) because ivi commits a tortious act within New York by retransmitting plaintiffs' copyrighted programs.  *See Basquiat v. Kemper*, No. 96 Civ. 0185, 1997 WL 527891, *3 (SDNY Aug. 25, 1997) (finding jurisdiction over company and its president for copyright infringement under section 302 (a) (2) for offering for sale one copy of an infringing work in New York).

And jurisdiction over ivi lies under CPLR § 302 (a) (3) as the company is committing a tort outside of New York causing harm within the state. *See, e.g., Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 5002, 2005 WL 357125, *1 (S.D.N.Y. Feb. 14, 2005).

As founder, developer, chief executive officer, and spokesman for a twelve-employee company, Mr. Weaver is subject to the personal jurisdiction of this Court because he has been personally responsible for ivi's acts of infringement. *See Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897, 2008 WL 4449314, *9 (S.D.N.Y. Sept. 28, 2008); *Design Tex Group*, 2005 WL 357125 at *4 (holding [corporate president] is subject to personal jurisdiction along with his company "so long as he can be held personally liable for his company's acts of infringement as alleged in the complaint"); *Rogers v HSN Direct Join Venture*, No. 97 Civ. 7710, 1999 WL 322663, *4 (S.D.N.Y May 20, 1999) (finding jurisdiction over corporate officer personally responsible for company's infringement).

Under New York law, an officer of a small company such as Mr. Weaver is personally liable for infringement so long as (1) he personally supervised the infringing activity of the company, and (2) he has a personal financial interest in the infringing activity. *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 517 F. Supp. 900, 904 (S.D.N.Y. 1981) (finding corporate president and operating head personally liable because he prepared the design found to be infringing and sold fabric printed with that design"); *Editorial Musical Latino Ams., S.A. v. MAR Int'l Records*, 829 F. Supp. 62, 64 (S.D.N.Y. 1993) (finding personal jurisdiction over corporate president because he directed the manufacture and distribution of the infringing products, at least one of which was described as his personal "Production").

Mr. Weaver is the "founder and chief executive" of ivi and "personally responsible for the operation of the infringing ivi service." Complaint ¶ 40. This "simple, concise, and direct"

allegation sufficiently identifies Mr. Weaver as a corporate officer with the ability to supervise or control the infringing activity of his twelve-employee business and a financial interest in the company. *See Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 8332, 2005 WL 1337864 *3 (S.D.N.Y. June 3, 2005) (denying motion to dismiss for lack of jurisdiction when complaint alleged officer "direct[ed] and control[ed] the actions of Defendant" and "ha[d] authorized, controlled, and directed [his corporation] to copy the copyrighted items"); *Rogers,* 1999 WL 322663 at *4. Mr. Weaver controls the small, privately held company that he started.

This Court has found that a high ranking in a small company necessarily implies a financial benefit. *See, e.g., Basquiat,* 1997 WL 527891 at *3 (denying motion to dismiss president of co-defendant because "the relatively high ranking position of Gardner within a small company necessarily implies that Gardner will derive financial benefit from the sales... in New York"); *Hypoxico, Inc. v. Colorado Altitude Training LLC*, No. 02 Civ. 6191, 2003 WL 21649437, at *3 (S.D.N.Y. July 14, 2003) (finding jurisdiction because individual defendant's "high ranking position within the small company" meant he would "necessarily benefit" from any sales of the infringing products in New York).

The Court may exercise jurisdiction over Mr. Weaver also because ivi was acting as his agent. CPLR § 302 (a) (providing jurisdiction over any non-domiciliary who transacts any business or commits a tortious act within the state "in person or through an agent"). To establish jurisdiction under an agency theory, plaintiffs must demonstrate that Mr. Weaver was a primary actor in the activities of ivi. As this Court has explained:

> Before a defendant corporation may be found to be acting as the agent of an officer, courts require that the officer be a "primary actor" in the transaction carried out by the agent corporation. Being a primary actor in the transaction at issue requires that the officer have knowledge of and consent to the transaction carried

out by the agent-corporation and that the officer have exercised
control over the corporation in the transaction.

*Basquiat*, at *3 (citations omitted); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 Civ.

7371, 2008 WL 2696168, at *6 (S.D.N.Y. July 7, 2008) ("At the heart of this inquiry is whether

the out-of-state corporate officers were primary actor[s] in the transaction in New York that gave

rise to the litigation, and not merely some corporate employee[s] ... who played no part in it").

That Mr. Weaver is "personally responsible for the operation of the infringing ivi service"

sufficiently alleges that Mr. Weaver was a "primary actor" in ivi's infringing activities.

Mr. Weaver's own public statements make clear his intimate knowledge of, direction of,

and participation in ivi's infringing activities, his consent to those activities, and his control over

the small company:

> Ivi says technicalities within the copyright law are allowing them to broadcast the
> networks; in return, it plans to pay the networks royalties for the programs it airs. .
> . . "We are very innovative in what we are bringing the table, and its [*sic*] going
> to shake things up," Weaver said. "We are conforming to the law in the same way
> that cable did when it launched 40 years ago. We don't think the story ends
> tomorrow and we fully expect things will drag on with legal challenges and
> lobbying for a while." Morrow Decl., Ex. 7, at p. 2.

> "We're going to be eating [the cable operators'] lunch. That's the entire point. We
> are the over-the-top alternative. At some point the big thing is for them to do data,
> right? So they'll be a data carrier and there's going to be a bunch of over-the-top
> private networks that supply your phone like Skype and movie rentals like
> Netflix." Morrow Decl., Ex. 6, at p. 5.

> "The reason you can get continuous television is that we are constantly building
> the file to deliver the best-quality picture, and the time to do that is variable. We
> could 'dial down' the delay, but viewers with slow Internet connections wouldn't
> like it. Clearly we're not a candidate for real-time betting on horse races, and
> football fans might get a text message about a touchdown before our subscribers
> see it. But in today's multiplatform/DVR/mobile/tablet/Internet/TV we think that
> 'burst delay' means less and less to the viewer, and it's an absolutely acceptable
> trade-off for a better-quality viewing experience." Morrow Decl., Ex. 8, at p. 2.

> "People assume that you must have an absolute war chest and have a billion
> dollars to claim that you are not infringing on copyright. It is an expensive
> process. It's a legal process, and we have the leading IP [intellectual property]

firm out of Seattle representing us -- Black, Lowe & Graham. They [broadcasters] are saying we're infringing on copyright. We're saying we're not, according to US copyright law. We point at the same paragraph they point at. It's really not a multibillion-dollar effort. It is something that is a known legal plan, and so we are plowing forward." Morrow Decl., Ex. 9, at pp. 2-3.

"We are just a third distribution means. So it's something new, it's something innovative, and of course we're going to get that initial, 'I must protect my content' piece. However it is not illegal, it is a perfectly legal. We're following every letter of the law and are distributing content legally, and broadcasters are paid." Morrow Decl., Ex. 8, at p. 4.

These statements make clear that Mr. Weaver is no mere functionary. *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F.Supp. 175, 181 (S.D.N.Y.1995). Instead, he is the primary actor in the activities of ivi that give rise to plaintiffs' copyright claims, and the jurisdiction of this Court.

### C.      The Exercise of Jurisdiction Over Mr. Weaver Does Not Offend Due Process.

The exercise of personal jurisdiction over Mr. Weaver comports with "traditional notions of fair play and substantial justice" as expressed in the due process clause of the Fourteenth Amendment. *McGee v. Internat'l Life Ins. Co.*, 355 U.S. 220, 222 (1957) (*citing Internat'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). Exercise of jurisdiction comports with the requirements of due process if minimum contacts exist between Mr. Weaver and New York. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

While Mr. Weaver resides in Washington state, his role as a primary actor in infringing activity of ivi is sufficient to satisfy the requirements of due process. *Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 23 (2d Cir.1988); *Calder v. Jones,* 465 U.S. 783, 789 (1984) (reporter and editor in Florida subject to California jurisdiction in libel action "based on 'effects' of their Florida conduct in California") (citations omitted).  Moreover, ivi's recent press releases evidence that Mr. Weaver has personally promoted and is planning to personally promote ivi in New York.  Mr. Weaver is availing himself of the benefits of appearing in New York; he should reasonably expect to be haled into court there to defend his actions. *See Kreutter v. McFadden*

*Oil Corp.*, 527 N.Y.S.2d 195, 198 (1988) ("So long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State").

In addition, when an individual is likely to be called into the forum in relation to the suit against his employer, it is hardly inconsistent with notions of fair play and substantial justice to expect him to be there to defend the claims against him as an individual as well. Defendants do not contest that this Court has obtained jurisdiction over ivi. As Mr. Weaver will undoubtedly be one of its principal witnesses and will have to come to New York for that purpose, the inconvenience he faces as a party to the suit individually is minimal or non-existent. *Id.* at 201. Accordingly, jurisdiction over Mr. Weaver comports with traditional notions of fair play and substantial justice.

## **CONCLUSION**

For the reasons stated above, defendants' motion to transfer this case to the Western District of Washington and to dismiss Mr. Weaver as a defendant for lack of personal jurisdiction should be denied.

20

Respectfully submitted,

By:  _Peter L. Zimroth_

Peter L. Zimroth
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York
(212) 715-1000
*peter.zimroth@aporter.com*

-- and --

Robert Alan Garrett
Hadrian R. Katz
C. Scott Morrow
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000
*robert.garrett@aporter.com*
*hadrian.katz@aporter.com*
*scott.morrow@aporter.com*

*Counsel for Plaintiffs*

Dated:  November 3, 2010